IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TUCKER GINN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMES L. GRACE, et al. | : | No. 06-4530 |

**REPORT AND RECOMMENDATION**

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE April 27, 2007

This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Tucker Ginn ("Ginn"), an individual currently incarcerated at the Huntingdon State Correctional Institution. For the reasons that follow, I recommend that the petition be dismissed.

**FACTS AND PROCEDURAL HISTORY:**

On October 30, 1995, after a jury trial before the Honorable John J. Poserina of the Court of Common Pleas of Philadelphia County, Ginn was convicted of first degree murder, aggravated assault, robbery, criminal conspiracy, and possessing an instrument of crime.[1] On January 24, 1996, Judge Poserina imposed the mandatory sentence of life imprisonment, after the jury deadlocked on the death penalty. Ginn did not file a direct appeal.

On October 1, 1997, Ginn filed a pro se petition under the Pennsylvania Post

---

[1]According to state court records Ginn shot and killed a Philadelphia Police Officer who was responding to a call about an armed robbery at a Roy Rogers restaurant in South Philadelphia.

Conviction Relief Act ("PCRA") 42 Pa. Con. Stat. § 9541, et seq. Ginn's petition was dismissed as untimely on February 23, 1998.[2] Ginn filed an appeal to the Pennsylvania Superior Court which vacated the order to dismiss and remanded for a determination of whether Ginn was indigent and therefore, entitled to the appointment of counsel. Commonwealth v. Ginn, No 935 Philadelphia 1998. On remand, the PCRA court found that Ginn was indigent at the time his PCRA petition was filed and that counsel should have been appointed. Counsel appointed to represent Ginn subsequently filed a letter pursuant to Commonwealth v. Finley, 550 A.2d. 213 (Pa. Super. 1988), certifying that he had reviewed the entire record and concluded that there were no meritorious issues to advance before the PCRA court. On September 9, 2000, and October 3, 2000, the PCRA court held evidentiary hearings, after which it dismissed Ginn's petition as untimely.

The Pennsylvania Superior Court affirmed the PCRA court's decision to dismiss the petition in an unpublished memorandum on August 21, 2002. Commonwealth v. Ginn, 809 A.2d 956 (Pa. Super. 2002) (unpublished table decision). The Pennsylvania Supreme Court denied allocatur on December 31, 2002. Commonwealth v. Ginn, 815 A.2d 631 (Pa. 2002) (unpublished table decision).

On August 20, 2004, Ginn filed a second pro se PCRA petition. The PCRA court dismissed the petition as untimely on April 19, 2005. The Pennsylvania Superior Court

[2]Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1) year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat. Ann. § 9545(b)(1).

affirmed the decision of the PCRA court in an unpublished memorandum opinion filed on February 28, 2006. Commonwealth v. Ginn, No. 1427 EDA 2005.

Ginn filed a petition for allowance of appeal in the Pennsylvania Supreme Court, but he failed to file the required number of copies. The matter was discontinued and closed.

On September 22, 2006,[3] Ginn filed the instant petition for a federal writ of habeas corpus claiming that he is in possession of after-discovered evidence that was withheld by the prosecution and that the suppression of this evidence constitutes a violation of Brady v. Maryland, 373 U.S. 83 (1963). Ginn further claims that this Brady violation constitutes state action that has prevented him from filing the instant petition in a timely manner. See Pet., at 9. Respondents have filed an answer stating that Ginn is not entitled to federal habeas relief because the instant petition is time barred under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").

---

[3]This court will presume that Ginn's petition was given to prison authorities on September 22, 2006, the date on which it was signed and his petition will be deemed filed as of that date. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)) (a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court). Although the instant petition was not filed in the Eastern District of Pennsylvania until October 10, 2006, any discrepancy in the dates is explained by the fact that Ginn originally filed his petition in the Middle District of Pennsylvania on September 22, 2006, and his petition was ultimately transferred to the Eastern District of Pennsylvania on October 10, 2006.

**DISCUSSION:**

## I. Statute of Limitations

______Section 101 of the AEDPA, effective April 24, 1996, amended habeas corpus law by imposing a one (1) year limitation period to applications for writ of habeas corpus filed by persons in state custody. 28 U.S.C.A. § 2244(d)(1). Section 2244, as amended, provides that the one (1) year limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The amended statute also provides that the time during which a properly filed application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2).

In the instant case, the applicable starting point for the statute of limitations is "the date on which the judgment became final by the conclusion of direct review or the

expiration of the time for seeking such review." Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000). Ginn's conviction became final on February 23, 1996, when the time for filing a petition for allowance of appeal in the Pennsylvania Superior Court expired. See Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken). Consequently, Ginn would have had until February 23, 1997, to timely file his § 2254 petition. However, because his conviction became final prior to April 24, 1996, the effective date of the AEDPA, Ginn would have had until April 23, 1997, to timely file his § 2254 petition. Duncan v. Walker, 533 U.S. 167 (2001) ("In the context of AEDPA's 1-year limitations period, which by its terms runs from 'the date on which the judgment became final,' see § 2244(d)(1)(A), the Courts of Appeals have uniformly created a 1-year grace period, running from the date of AEDPA's enactment, for prisoners whose state convictions became final prior to AEDPA."); Burns, 134 F.3d at 111-12.

Ginn submitted the instant petition on September 22, 2006, approximately eight (8) years and five (5) months after the limitation period had expired on April 23, 1997.[4] Ginn argues, however, that he is in possession of after discovered evidence that was withheld

[4]Petitioner filed his first PCRA on October 1, 1997, and a second PCRA on August 20, 2004, after the federal statute of limitations had expired. These PCRA petitions did not toll the running of the AEDPA limitations period because they were dismissed as untimely and are not considered "properly filed application[s] for post-conviction relief. See 28 U.S.C. § 2254(d)(2) (the time during which a properly filed application" for state post-conviction review is pending shall not be counted toward the one (1) year period of limitation); Schlueter v. Varner, 384 F.3d 69, 78, (3d Cir. 2004); Merritt v. Blaine, 326 F.3d 157, 165-166 (3d Cir. 2003).

from the defense by the prosecution and that the suppression of this evidence violated Brady v. Maryland. Ginn further argues that the prosecution's Brady violation constitutes state action that has prevented him from filing the instant petition in a timely manner. 28 U.S.C. § 2244(d)(1)(B), (D).

**A. Brady Violation**

Ginn alleges that the prosecution violated the due process standards enunciated in Brady v. Maryland, 373 U.S. 83, 87 (1963), by failing to disclose favorable evidence, specifically the information contained in a Federal Bureau of Investigation ("FBI") Memorandum acquired by Ginn through a request under the Freedom of Information Act. See Pet. at 9.

*1. Standard of Review*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") which became effective on April 24, 1996, amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254. Werts, 228 F.3d at 195. Since Ginn filed his habeas petition on September 22, 2006, we are required to apply the amended standards set forth in the AEDPA to his claims for federal habeas corpus relief. Id. (citing Lindh v. Murphy, 521 U.S. 320, 336 (1997)) (presuming that a federal habeas court is to apply the amended standards set forth in the AEDPA when a petition is filed after the effective date of the AEDPA).

The AEDPA increases the deference federal courts must give to the factual

findings and legal determinations of the state courts. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000). In Williams, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir. 2000) (citing Williams, 529 U.S. at 389-390). The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." Id. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. (citing Williams, 529 U.S. at 388-389). "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 389).

*2. The Brady Standard*

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. at 87. In subsequent cases, the Supreme Court recognized that, regardless of whether the defendant made a request for evidence, due process is violated when the prosecution suppresses exculpatory or impeachment evidence, and "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 676-82 (1985); see also Strickler v. Greene, 527 U.S. 263, 289 (1999); Hollman v. Wilson, 158 F.3d 177, 181 (3d Cir. 1998) (evidence is material if it

"could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict"). Thus, to establish a Brady violation requiring relief, a defendant must show that evidence, favorable to the accused, was suppressed by the prosecution, and that the withheld evidence is material either to guilt or punishment. Bagley, 473 U.S. at 669.

As previously noted, Ginn's Brady violation claim is based upon an FBI memorandum that he obtained through a request under the Freedom of Information Act. The FBI memorandum contained a police report compiled by the Philadelphia Police Department Homicide Division and FBI documents relating to the police report. Commonwealth v. Ginn, No.1427 EDA 2005. The police report contained the details of an interview with a bank teller that occurred three (3) days after the crime for which Ginn was found guilty. Id. The teller reported that she had become suspicious when a man came into the bank to exchange rolled coins for paper currency. Id. at 3. Consequently, the teller notified police and provided them with the license plate number for the man's car. Id. The FBI documents included in the memorandum indicated that the rolled coins were in fact proceeds from the crime committed at the Roy Rogers Restaurant. Id. The documents also state that the FBI was able to identify and apprehend the man who had attempted to exchange the rolled coins but that the man ultimately escaped from FBI custody. Id. Ginn claims that the failure of the prosecution to disclose the information contained in the FBI Memorandum resulted in a "violation of state and federal

constitutional rights to a fair trial." See Pet. at 9.

In reviewing this claim, the state court concluded that there was no Brady violation because the evidence allegedly withheld by the prosecution was not material. See PCRA Opinion, at 6. The court found that Ginn failed to show that the evidence would have reasonably affected the outcome of the trial. Id. The court further added that the evidence presented at trial was more than sufficient to conclude that Ginn was guilty. Id.

"Under the AEDPA standard, we ask only whether the [state court] reasonably applied Brady and its progeny in concluding that the non-disclosure was immaterial as a matter of law." Marshall v. Hendricks, 307 F.3d 36, 60 (3d Cir. 2002). I conclude that it did. As previously noted, a Brady violation is established "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). This is not such a case. The court noted that evidence presented at trial was substantial and included: Ginn's confession to the crime; multiple eyewitnesses testimony that identified Ginn as the shooter; Ginn's statement informing police where the gun used in the crime could be found; and Ginn's fingerprints on the gun. I also note that Ginn fails to establish, or in fact posit in any way, how the information contained in the FBI memorandum is exculpatory. The fact that the FBI was able to identify the individual who attempted to use the proceeds from the crime at the Roy Rogers restaurant, three (3) days after the crime had been committed, does not in any way reflect upon Ginn's

involvement in the crime. I agree with the Superior Court's assessment that "three [3] days was more than sufficient time for [Ginn] to have utilized the money." Commonwealth v. Ginn, No. 1427 EDA 2005, at 4.

Given the weight of the evidence presented by the state court, I find that Ginn has not demonstrated "a reasonable probability that the jury would have returned a different verdict if the information had been disclosed." Smith v. Holtz, 210 F.3d 186, 198-199 (3rd Cir. 2000) (citing Buehl v. Vaughn, 266 F.3d 163, 181 (3d Cir. 1999)). As a result, I conclude that the state court's decision is not contrary to, or an unreasonable application of federal law. Hollman, 158 F.3d at 183. Accordingly, this claim should be denied.

Consequently, as I have found that there is no merit to Ginn's Brady claim, I also find that there has been no state action that has prevented him from filing the instant petition in a timely manner. As a result, this claim should also be denied.

**B. After-Discovered Evidence**

Ginn's claim of after-discovered evidence can be disposed of for similar reasons. Upon review of Ginn's claim, the Superior Court determined that the Philadelphia Police Department report detailing the interview with the bank teller was turned over to the defense prior to trial, but that the related FBI documents were not. Commonwealth v. Ginn, No. 1427 EDA 2005, at 3. Nonetheless, the court held that the FBI Memorandum did not constitute after-discovered evidence. Id. In support thereof, the court noted that in order to obtain relief conditioned upon newly discovered evidence, a defendant must

establish that such evidence would likely compel a different verdict. Id. Upon review of the relevant evidence, the court reasoned that the alleged after-discovered evidence is not "of such nature and character that a different verdict would likely result." Id. at 4. The court also found that the evidence presented at trial was overwhelming.[5] Id.

Ginn fails to establish how the information contained in the FBI memorandum would likely have produced a different result at trial. As noted above, the FBI documents merely state that an unidentified man attempted to utilize the proceeds from the robbery at the Roy Rogers Restaurant three (3) days after the crime had been committed. This information does not serve to place into question the great weight of evidence presented at trial and does not serve to undermine confidence in the verdict. See Kyles v. Whitely, 514 U.S. 419, 434 ("the question is not whether the defendant would more likely than not have received a different verdict with the suppressed evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence"). Therefore, this claim should be dismissed.

**II. Equitable Tolling**

The United States Supreme Court has not decided whether equitable tolling is available in the context of a federal habeas petition. See, e.g., Lawrence v. Florida, -U.S.-, 127 S.Ct. 1079, 1083 (2007) ([w]e have not yet decided whether § 2244 (d) allows

---

[5]The PCRA court in dismissing Ginn's claim of after-discovered evidence on other grounds found that the information contained in the FBI Memorandum was "merely cumulative" of evidence previously disclosed, specifically the Philadelphia Police Department report detailing the interview with the bank teller. PCRA Opinion at 5.

for equitable tolling...we assume without deciding that it is"). The Third Circuit, however, has ruled that the one (1) year period of limitation for § 2254 is subject to equitable tolling because this limitation period is a statute of limitations and not a jurisdictional bar. See Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1988).

In assuming that equitable tolling is available, the United States Supreme Court has stated that a litigant bears the burden of establishing two (2) elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Lawrence, 127 S.Ct. at 1085 (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (requiring that plaintiff has "in some extraordinary way" been prevented from asserting his rights).

Ginn does not make a claim for equitable tolling and I do not find the instant matter to be one of the "rare situation[s] where equitable tolling is demanded by sound legal principals as well as the interests of justice." See Jones, supra. Because Ginn has not established "extraordinary" circumstances which would justify application of equitable principles, this court finds that there are no circumstances which would make the rigid application of the limitation period unfair. Consequently, Ginn's petition should be dismissed as untimely.

Therefore, I make the following:

**R E C O M M E N D A T I O N**

AND NOW, this 27th day of April, 2007, IT IS RESPECTFULLY RECOMMENDED that the petition for a writ of habeas corpus be DISMISSED. There has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.

/S/ PETER B. SCUDERI
PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TUCKER GINN | : | CIVIL ACTION |
| v. | : | |
| JAMES L. GRACE, et al. | : | No. 06-4530 |

**ORDER**

AND NOW, this day of , 200 , upon careful and independent consideration of the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, and after review of the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi, and any objections filed thereto, IT IS ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED.
2. The petition for a writ for habeas corpus filed pursuant to 28 U.S.C. § 2254 is DISMISSED.
3. There is no basis for the issuance of a certificate of appealability.

BY THE COURT:

______________________
ROBERT F. KELLY, J.